

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-13-00054-CR

_____

JENNIFER JILL WHITEHEAD, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 3rd District Court
Anderson County, Texas
Trial Court No. 30256

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

O P I N I O N

Jennifer Jill Whitehead was tried and convicted by an Anderson County jury[1] for the capital murder of Emma Whitehead, an individual under the age of six,[2] and for injury to a child.[3]  Whitehead was sentenced to life without parole on her capital murder conviction and to fifteen years' incarceration on her injury to a child conviction.  Whitehead appeals her convictions claiming (1) that the State's closing argument referenced her failure to testify in violation of the United States Constitution, the Texas Constitution, and the Texas Code of Criminal Procedure and (2) that the trial court abused its discretion in disqualifying a juror immediately prior to jury deliberations.[4]  We affirm the judgment of the trial court.

I.      The State's Comment on Whitehead's Failure to Testify

Whitehead contends that the trial court erred by overruling her objection to the State's comment on her failure to testify in the guilt/innocence phase.  Whitehead's complaint is directed to the State's jury argument:

> Now, we've got the portion of the Charge that talks about what the lawyers call manner and means, which is a blunt -- it says "blunt force trauma by the defendant's hand, foot, object, or manner or means unknown to the grand jury." And why is that important?  Well, there's no witnesses.  There's no witnesses to the crime, other than the defendant --

---

[1]Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to Section 73.001 of the Texas Government Code.  *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013).  We are unaware of any conflict between precedent of the Twelfth  Court of Appeals and that of this Court on any relevant issue.  *See* TEX. R. APP. P. 41.3.

[2]*See* TEX. PENAL CODE ANN. § 19.03(a)(8) (West Supp. 2013).

[3]*See* TEX. PENAL CODE ANN. § 22.04 (West Supp. 2013).

[4]Because these issues do not involve the underlying criminal allegations, we will limit our discussion of the facts to those relevant to the issues raised by Whitehead.

2

Whitehead objected to the contention that there were no witnesses to the crime other than the defendant as an impermissible comment on her right not to testify. The court withheld ruling until the State finished its statement: "Your Honor, that the only people there are the defendant and the child. So, we don't know what exactly happened." Whitehead again objected to the State's argument as a direct comment on her Fifth Amendment privilege against self-incrimination. The trial court overruled Whitehead's objection. The State went on to explain,

> [W]e may not know exactly what was used to cause these various injuries. It could have been an object. . . . It could have been some sort of cord, or rope, or something like that, something flat . . . we don't know exactly what caused those injuries, and that language allows you to consider the different possibilities that were used, different instruments to cause her death.

The State's comment on a defendant's failure to testify offends both the United States and Texas Constitutions as well as Texas statutory law. *See* U.S. CONST. amend. V; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 38.08 (West 2005). To violate the right against self-incrimination, the offending language must be viewed from the jury's standpoint, and the implication that the comment referred to the defendant's failure to testify must be clear. *Bustamante v. State* 48 S.W.3d 761, 765 (Tex. Crim. App. 2001). The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. *Id.* It is not sufficient that the comment might be construed as an implied or indirect allusion to the defendant's failure to testify. *Id.* "'In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character.'" *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007) (quoting *Bustamante*, 48 S.W.3d at 765). Calling

3

attention to the absence of evidence that only the defendant could produce will result in reversal only if the remark can be construed to refer to appellant's failure to testify and not to the defense's failure to produce evidence. *Banks v. State*, 643 S.W.2d 129, 134–35 (Tex. Crim. App. 1982); *Searcy v. State*, 231 S.W.3d 539, 549 (Tex. App.—Texarkana 2007, pet. ref'd).

The evidence at trial showed that Whitehead and Emma were the only two people present when Emma received the injuries that ultimately resulted in her death.[5] In light of this evidence, the State argued, "There's no witnesses to the crime, other than the defendant. . . . [T]he only people there are the defendant and the child. So, we don't know exactly what happened." When this language is considered together with the fact that the State could not say with certainty how, precisely, the child's death was caused, this argument calls attention to the absence of evidence that only the defendant could produce[6] and clearly implies that Whitehead failed to testify. *See Angel v. State*, 627 S.W.2d 424, 426 (Tex. Crim. App. [Panel Op.] 1982) (where only witnesses to offense were victim and defendant, argument that defendant's exposure of genital organs to victim was uncontested was reference to defendant's failure to testify); *Crocker v. State*, 248 S.W.3d 299, 305 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (where only witnesses to offense were defendant and victim, State's argument that jury "'heard from the State's witnesses as to who was there . . . [a]nd the State's witnesses only,'" was indirect comment on defendant's failure to testify, as it drew attention to absence of evidence only defendant could supply); *see*

---

[5]Jennifer Whitehead and Lance Whitehead, together with Emma, watched television in the master bedroom on the morning Emma was critically injured. After Lance fell asleep, Jennifer and Emma left the master bedroom, leaving Emma in Jennifer's sole care.

[6]The fact that this argument was made while discussing the court's charge is of no consequence. A defendant's constitutional rights cannot be violated under the guise of discussing the charge. *Morgan v. State*, 816 S.W.2d 98, 102 (Tex. App.—Waco 1991, pet. ref'd).

4

*also McDaniel v. State*, 524 S.W.2d 68, 69 (Tex. Crim. App. 1975) (State's argument there was no competent witness other than defendant who could tell jury what really happened referred to defendant's failure to testify);[7] *Dietz v. State*, 692 S.W.2d 593, 595 (Tex. App.—Beaumont 1985, pet. ref'd) (where only witnesses to offense were defendant and victim, State's argument that only defendant could testify as to condition of her body immediately preceding attack on deceased was comment on defendant's failure to testify).

The State contends that the jury was unlikely to naturally and necessarily interpret its argument as a comment on Whitehead's failure to testify because the jury already heard "[Whitehead's] side of the story" from "other [unnamed] witnesses and from [Whitehead] herself in videotaped interviews" played during trial. Two recorded statements Whitehead made to law enforcement authorities were admitted into evidence and played to the jury. While this argument may affect the potential gravity of the error, we cannot conclude that the jury would reasonably interpret the State's argument as simply referring to Whitehead's statements to law enforcement.

A prosecutorial comment that impinges on the privilege against self-incrimination is an error of constitutional magnitude and must be analyzed under Rule 44.2(a) of the Texas Rules of Appellate Procedure. *Snowden v. State*, 353 S.W.3d 815, 818 (Tex. Crim. App. 2011); *see* TEX. R. APP. P. 44.2(a). When confronted with such an error, we must reverse unless we conclude beyond a reasonable doubt that the error did not contribute to the conviction. *Id*. at 818, 822 (citing TEX. R. APP. P. 44.2(a)). We focus not on the perceived accuracy of the conviction, but

---

[7]In *McDaniel*, the prosecutor argued, "There were no eye witnesses. We know that. There were three people there that could tell you what happened, possibly tell you, and Y__ and P__ are too young. They are not legally competent to testify so we have to go with what we have got --[.]" *McDaniel*, 524 S.W.2d at 69.

5

instead on the error itself, in the context of the trial as a whole, to determine the likelihood that the error "genuinely corrupted the fact-finding process." *Id*. at 819. We consider the nature of the error, the extent it was emphasized by the State, the probable implications of the error, and the weight a juror would probably place on the error. *Id*. at 822. Our analysis should take into account "any and every circumstance apparent in the record that logically informs" our determination of whether the error contributed to the conviction beyond a reasonable doubt. *Id*.; *see also* TEX. R. APP. P. 44.2(a).

The error in this case violates the constitutional right against self-incrimination, the violation of which adversely affects the integrity of the process leading to a conviction. *See Bell v. State*, 356 S.W.3d 528 (Tex. App.—Texarkana 2011), *aff'd*, 415 S.W.3d 278 (Tex. Crim. App. 2013). "Given the *Snowden* rationale, however, our harm analysis should assess just the effect of the error on this particular verdict or result." *Id.* at 538. Here, the trial court overruled Whitehead's objection to the State's indirect comment on her failure to testify. Overruling the objection conveyed to the jury that it was proper to infer guilt from Whitehead's failure to testify. *See Snowden*, 353 S.W.3d at 824–25. This factor weighs toward a finding of harm.

We find it particularly important that the presentation of Whitehead's recorded statements, in which she offered explanations of how Emma was injured, may have lessened the potential gravity of the error. *See Cantu v. State*, 395 S.W.3d 202, 211 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (Cantu's attorney referred to Cantu's statements, which were played for jury, as "testimony"). To the extent that this evidence reduced the risk that the jury

6

impermissibly inferred Whitehead's guilt based on her failure to testify, it weighs in favor of finding the error to be harmless.

We next examine the extent, if any, to which the State emphasized the error. *See Snowden*, 353 S.W.3d at 822. We have been directed to nowhere in the record that the State emphasized the error. Likewise, our own review of the record has disclosed no emphasis by the State of the error. In the remainder of its closing argument, the State repeatedly referred to information Whitehead disclosed in her statements to law enforcement. Because the State did not emphasize the error or seek to benefit from it, this factor weighs in favor of a finding that the error was not harmful. *See Bell*, 356 S.W.3d at 538.

Under the final *Snowden* factors, we consider the probable implications of the error and the probable weight a juror would place on the error. *Id.* In this analysis, we review the instructions and other relevant information the jury heard on the issue. *Cantu*, 395 S.W.3d at 211. The court's charge instructed the jury as follows:

> Our law provides that a defendant may testify on their own behalf if they elect to do so. This is a right given to a defendant, and in the event they elect not to testify, that fact cannot be taken as a circumstance against them. In this case, the defendant has elected not to testify, and you are instructed that you cannot and must not refer to or allude to the fact that the defendant has not testified throughout your deliberations or take it into consideration for any purpose whatsoever.

The jury is presumed to have followed this instruction. *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998); *Graham v. State*, 96 S.W.3d 658, 661 (Tex. App.—Texarkana 2003, pet. ref'd). This instruction, therefore, mitigated the effect of the State's argument. *See Cantu*,

7

395 S.W.3d at 212. The record is devoid of any other relevant information heard by the jury on this issue.

After careful consideration of the above factors, we conclude, beyond a reasonable doubt, that any error in the trial court's decision to overrule Whitehead's objection to the prosecutor's improper comment was harmless and did not contribute to Whitehead's conviction. *See Snowden*, 353 S.W.3d at 822. Moreover, the error was not "reasonably likely to have caused such prejudice as to distract the jury or divert it from its proper fact-finding role." *See id.*

## II.     Removal of Juror

Prior to allowing the jury to retire for deliberations, the trial court announced that all cell phones would be collected. At that point, a juror informed the court that he had recorded his thoughts about the trial on his cell phone that morning because he "knew today was going to be deliberation day." The juror explained that he "just wanted to have something [he] could fall back on" and denied recording any part of the trial or listening to anything at home. The State, however, indicated that it believed the juror violated the court's instructions by taking notes and thereafter objected to the juror taking any further part in deliberations. The State surmised that the juror "was going to take the phone in [the jury room] and use it to help him sway the other jurors," which the State claimed "violates the spirit of the Court's instructions." Following these complaints, the juror was questioned by the court, at which time he denied playing the phone recording to any of the other jurors. At the court's request, the juror agreed to permit the court to listen to the recording in camera. After listening to a portion of the thirteen-minute recording describing the parties to the case, the trial court indicated, "I am going to let him go, and ask that

8

he leave the courthouse." The court then dismissed the juror over Whitehead's objection and seated an alternate. On appeal, Whitehead contends that the trial court erred in its decision to release the juror and to substitute in his stead the first alternate juror.

## A. Standard of Review

The trial court has discretion to determine whether a juror has become disabled and to seat an alternate juror. *Scales v. State*, 380 S.W.3d 780, 783 (Tex. Crim. App. 2012). In deciding to remove a juror, the trial court must make a finding, sufficiently supported by the record, that the juror was disqualified or unable to perform the duties of a juror. *Id*.; *see* TEX. CODE CRIM. PROC. ANN. art. 33.011(b) (West Supp. 2013). We may not substitute our own judgment for that of the trial court. Instead, we are to assess whether, after viewing the evidence in the light most favorable to the trial court's ruling, the ruling was arbitrary or unreasonable. *Scales*, 380 S.W.3d at 784. The ruling must be upheld if it is within the "zone of reasonable disagreement." *Id*. Absent an abuse of discretion, no reversible error will be found. *Id*.

## B. Analysis

Although not explicitly stated in the record, we presume, based on the parties' arguments as presented in their briefs, that the trial court concluded the juror in question was unable or disqualified to perform his duties under Article 33.011(b) of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 33.011(b).

Article 33.011(b) of the Texas Code of Criminal Procedure states that, before a jury renders a verdict regarding a defendant's guilt or innocence, alternate jurors "shall replace jurors who . . . become or are found to be unable or disqualified to perform their duties . . . ." TEX.

9

CODE CRIM. PROC. ANN. art. 33.011(b). Although the statute does not define "unable to perform," appellate courts have concluded that "unable" as used in Article 33.011 is indistinguishable from "disabled" as used in Article 36.29. *See Scales*, 380 S.W.3d at 783; *Sandoval v. State*, 409 S.W.3d 259, 279 (Tex. App.—Austin 2013, no pet.); *Sneed v. State*, 209 S.W.3d 782, 786 (Tex. App.—Texarkana 2006, pet. ref'd) ("one must strain to recognize real differences in the meaning of the two words in this context").

The term "disability," as utilized in Article 36.29,[8] has been interpreted to require that the juror is suffering from a "'physical illness, mental condition, or emotional state that would hinder or inhibit the juror from performing his or her duties as a juror,' or that the juror [is] suffering from a condition that inhibit[s] him from 'fully and fairly performing the functions of a juror.'" *Scales*, 380 S.W.3d at 783. To support its decision that a juror is disabled, the trial court must make a finding, sufficiently supported by the record, that the juror was disqualified or unable to perform the duties of a juror. *Id.* The trial court may not dismiss a juror for reasons related to that juror's evaluation of the sufficiency of the evidence. *Id*. at 783.

The State contends that the juror was disqualified because he violated the spirit of the court's instructions in making the recording and in his stated intention of playing it for the other jurors. Although the State fails to identify the instruction(s) at issue, we presume, from the context of the argument that the State is referring to the court's instruction that the jury neither "consider nor discuss any fact or circumstance not thus in evidence or reasonably deductible

---

[8]Article 36.29 of the Texas Code of Criminal Procedure addresses juror death and/or disability. TEX. CODE CRIM. PROC. ANN. art. 36.29 (West Supp. 2013).

10

from the evidence." At trial, the State complained that the juror took notes and talked about the case after he left the courtroom. These complaints are not supported by the record.

Here, the record indicates that the juror recorded his impressions of the trial, but did not record any part of the trial itself. The recording was made before the juror arrived at court, not during the trial itself. The juror never discussed his recording or played it for any of the other jurors, and the remaining jurors confirmed that they had heard nothing about the juror's recording. Even assuming the juror could legally be disqualified for the reasons on which the State relies, there is no evidence that the juror violated any of the trial court's instructions.

The trial court indicated that it only listened to the first three minutes of the thirteen minute recording, during which the juror described the parties to the case. Even if the juror's recorded impressions could be interpreted as his evaluation of the sufficiency of the evidence, the trial court had no discretion to dismiss the juror for that reason. *See id.* Finally, there is no evidence the juror suffered from any type of physical illness or emotional stress that could result in physical illness. *See Routier v. State*, 112 S.W.3d 554, 558 (Tex. Crim. App. 2003) (no abuse of discretion in discharging juror as disabled where there is sufficient evidence of physical illness); *Romero v. State*, 396 S.W.3d 136, 143 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (no abuse of discretion in discharging juror as disabled where emotional stress resulted or could result in physical illness).[9]

---

[9]The juror's recorded comments are rather bizarre including references to Satanism, demon possession, hope, theatrics, and "a random act of chaos creating unity." The juror also stated, "So, this was beautiful . . . real life . . . it was happening." Comments were also directed to the physical attractiveness of trial participants. The juror intended to play these comments to the jury during deliberations, and the trial court properly intervened to avoid that occurrence. We understand the trial court's concern, but the record does not support a conclusion that the juror was mentally or emotionally disabled to perform the duties of a juror. Once again, we call for an amendment to the

The record in this case does not support a finding that the juror was unable to perform his duties as a juror. Under these circumstances, we conclude the trial court abused its discretion in removing the juror from service and replacing him with the alternate juror.

The next step in our analysis is to determine whether the error resulted in harm. Because Whitehead complains of a statutory violation and does not claim a violation of her constitutional rights, our harm analysis is conducted pursuant to Rule 44.2(b) of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 44.2(b); *see also Scales*, 380 S.W.3d at 786; *Sneed*, 209 S.W.3d at 788. Rule 44.2(b) provides that an appellate court must disregard a nonconstitutional error that does not affect a criminal defendant's "substantial rights." TEX. R. APP. P. 44.2(b). An error affects a substantial right of the defendant when the error has a substantial and injurious effect or influence in determining the jury's verdict. *Scales*, 380 S.W.3d at 786. Reversible error has not occurred if the appellate court, after examining the record as a whole, "has fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *see Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

Here, the record indicates that, when the juror's recording was discovered, the jury had not yet begun deliberations. Both the existence of the recording and its contents were unknown to the other jurors. There is no evidence that the juror's opinions (if any) about how the case should be decided were disclosed to the other jurors. Moreover, the substituted juror was subjected to the same selection process, was properly sworn, and heard all of the evidence. A

---

statute to grant a trial judge, upon a finding of good cause, the discretion to replace a juror with a duly selected alternate juror. *See* TEX. CODE CRIM. PROC. ANN. art. 33.011 (amendment of Article 33.011 in 2007 allows such only on "agreement of the parties"); *see Sneed*, 209 S.W.3d at 787.

defendant is not harmed by a trial court's error in discharging a juror where the record shows the alternate juror seated in the discharged juror's place was subjected to the same selection process, was properly sworn, heard all of the evidence, heard the trial court's charge, and was seated before deliberations. *Sneed*, 209 S.W.3d at 788. Further, the record shows no taint from the alternate juror seated in the discharged juror's place. *See id*.; *Ponce v. State*, 68 S.W.3d 718, 722 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). Whitehead has complained of no harm suffered from the replacement of the juror with the alternate juror, and no harm is evident from the record. Accordingly, we conclude that Whitehead was not harmed by the trial court's error because it did not affect her substantial rights.

## III. Conclusion

We affirm the trial court's judgment.


Jack Carter
Justice

Date Submitted:     April 18, 2014
Date Decided:       June 19, 2014

Publish

13