ACCEPTED
06-14-00241-CR
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
4/9/2015 9:09:27 AM
DEBBIE AUTREY
CLERK

**ORAL ARGUMENT REQUESTED**

CAUSE NOS. 06-14-00241-CR

IN THE

COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS AT TEXARKANA

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

4/9/2015 9:09:27 AM

DEBBIE AUTREY
Clerk

_____

KELLY WAYNE LAMON, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

ON APPEAL FROM THE 102ND JUDICIAL DISTRICT COURT
RED RIVER COUNTY, TEXAS; HONORABLE BOBBY LOCKHART
TRIAL COURT NO. CR-02184

_____

# APPELLEE'S (STATE'S) BRIEF

_____

Val J. Varley, County and District Attorney
Red River County and District Attorney's Office
Red River County Courthouse
400 North Walnut Street
Clarksville, Texas    75426-4012
(903) 427-2009
(903) 427-5316 (Fax)

**ATTORNEYS FOR THE STATE OF TEXAS**

1

## IDENTITY OF PARTIES AND COUNSEL

Pursuant to Tex. R. App. P. 38.2(a)(1)(A), the list of parties and counsel is not required to supplement or correct the appellant's list.

# **TABLE OF CONTENTS**

IDENTITY OF PARTIES AND COUNSEL                    2

TABLE OF CONTENTS                    3

INDEX OF AUTHORITIES                    4

STATEMENT OF THE CASE                    7

STATEMENT REGARDING ORAL ARGUMENT                    8

SOLE ISSUE PRESENTED IN REPLY                    9

INTRODUCTION                    10

STATEMENT OF FACTS                    11

SUMMARY OF THE ARGUMENT                    20

ARGUMENT AND AUTHORITIES                    21

PRAYER                    36

CERTIFICATE OF COMPLIANCE                    37

CERTIFICATE OF SERVICE                    37

# INDEX OF AUTHORITIES

**TEXAS CASES:**                                                          **PAGE(S):**

*Carrillo v. State*,
597 S.W.2d 569 (Tex. Crim. App. 1980).                                    23

*Castro v. State*,
233 S.W.3d 46 (Tex. App.--Houston [1st Dist.] 2007, no pet.).             25, 27

*Chavez v. State*,
134 S.W.3d 244 (Tex. App.--Amarillo 2003, pet. ref'd).                    32-33

*Hegar v. State*,
11 S.W.3d 290 (Tex. App.--Houston [1st Dist.] 1999, no pet.).             25

*Hill v. State*,
90 S.W.3d 308 (Tex. Crim. App. 2002).                                     24, 28-32

*Kinslow v. State*, No. 06-14-00083-CR,
2014 Tex. App. LEXIS 13619, 2014 WL 7204556
(Tex. App.--Texarkana December 14, 2014, no pet.)
(mem. op., not designated for publication).                               12

*Landrum v. State*,
788 S.W.2d 577 (Tex. Crim. App. 1990).                                    23

*Martel, Joseph M. v. The State of Texas*,
No. 12-07-00034, 2008 WL 257367, 2008 Tex. App. LEXIS 652
(Tex. App.--Tyler January 31, 2008, no pet.)
(mem. op., not designated for publication).                               30, 32

*Ransom v. State*,
920 S.W.2d 288 (Tex. Crim. App. 1996).                                    34

*Ricketts v. State*,
89 S.W.3d 312 (Tex. App.--Fort Worth 2002, pet. ref'd).                   28

*Romero v. State*,

396 S.W.3d 136 (Tex. App.--Houston [14th Dist.] 2013, no pet.). 25, 27

*Sandoval v. State*,
409 S.W.3d 23 (Tex. App.--Austin 2013, no pet.).                    23

*Scales v. State*,
380 S.W.3d 780 (Tex. Crim. App. 2012).                   20, 33-34

*Sneed v. State*,
209 S.W.3d 782 (Tex. App.--Texarkana 2006, pet. ref'd).           23

*Thurman, Tracy Lee v. The State of Texas*, No. 11-10-00086-CR,
2011 WL 3890564, 2011 Tex. App. LEXIS 7225
(Tex. App.--Eastland August 31, 2011, no pet.)
(mem. op., not designated for publication).                        32

*Whitehead v. State*,
437 S.W.3d 547 (Tex. App.---Texarkana 2014, pet. ref'd).20, 31, 33

## TEXAS CODE(S):                                            PAGE(S):

Tex. Code Crim. Proc. Ann. art. 36.29(a) (West Supp. 2014).    21-23, 25

Tex. Code Crim. Proc. Ann. art. 36.29(c) (West Supp. 2014).    21-23,
                                                               25-27

Tex. Code Crim. Proc. Ann. art. 33.011(b) (West Supp. 2014).   22-23, 25

Tex. Penal Code Ann. § 22.01(a)(1), (b)(1) (West Supp. 2014).        7

## TEXAS RULES OF APPELLATE PROCEDURE:           PAGE(S):

Tex. R. App. P. 9.4(i)(3)                                          37

Tex. R. App. P. 9.5                                                37

Tex. R. App. P. 33.1(a)                                            23

Tex. R. App. P. 38.2                                          8, 10

Tex. R. App. P. 38.2(a)(1)(A)                                 2

Tex. R. App. P. 44.2(b)                                       33-35

## STATEMENT OF THE CASE

After an incident at the jail on May 4, 2014, a Red River County grand jury returned an original indictment that charged Lamon with the felony offense of assault on a public servant. *See* Tex. Penal Code Ann. § 22.01(a)(1), (b)(1) (West Supp. 2014). During the course of a jury trial, the trial court ruled that one of the jurors "just can't fully and fairly perform his functions as a juror, and I'm going to release him from service at this time." *See* RR, Vol. 6, pg. 12. After arguments of counsel, the trial court proceeded to trial with eleven jurors. *See* CR, pg. 59.

At the conclusion of the guilt-innocence phase, the jury retired to begin its deliberations; and by its verdict, the jury found Lamon guilty of the felony offense of assault of a public servant, as charged in the indictment. *See* RR, Vol. 6, pgs. 142-143; CR, pg. 63. Later, the jury found a prior felony conviction to be "true" and assessed punishment at confinement for twelve (12) years in the Institutional Divison of the Texas Department of Criminal Justice. *See* RR, Vol. 8, pg. 48; CR, pgs. 71-72.

From the trial court's final conviction (CR, pgs. 85-86), Lamon timely filed his notice of appeal. *See* CR, pgs. 94-95. By this appeal, Lamon brought a single issue/point of error that questioned the trial court's decision to proceed with eleven jurors.

## STATEMENT REGARDING ORAL ARGUMENT

The appellant, Lamon, requested oral argument because it might assist "by discussing the factual basis for the trial court's decision." *See* Appellant's Brief, pg. 8.

The State will also request oral argument in the above-styled and numbered appellate cause. *See* Tex. R. App. P. 38.2(a). While the factual basis for the trial court's decision in removing juror Yaross was important, oral argument might further assist this Court in clarifying when, and if, a trial court abuses its discretion in proceeding to trial with eleven jurors as a less drastic alternative to a requested mistrial.

Oral argument might further assist this Court in its harm analysis, if any.

## ISSUE PRESENTED IN REPLY

**SOLE ISSUE PRESENTED IN REPLY:** **THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN REMOVING JUROR YAROSS AND IN PROCEEDING TO TRIAL WITH ELEVEN JURORS AS A LESS DRASTIC ALTERNATIVE TO THE APPELLANT'S REQUESTED MISTRIAL; ALTERNATIVELY, THE RECORD DID NOT REVEAL HARM.**

CAUSE NO. 06-14-00241-CR

IN THE

COURT OF APPEALS

SIXTH APPELLATE DISTRICT OF TEXAS AT TEXARKANA
_____

KELLY WAYNE LAMON, Appellant

V.

THE STATE OF TEXAS, Appellee
_____

ON APPEAL FROM THE 102ND JUDICIAL DISTRICT COURT
RED RIVER COUNTY, TEXAS; HONORABLE BOBBY LOCKHART;
TRIAL COURT NO. CR-02184
_____

# APPELLEE'S (STATE'S) BRIEF
_____

COMES NOW, the State of Texas, by and through the elected County and District Attorney of Red River County, Val J. Varley, and the County and District Attorney's Office of Red River County, files this Appellee's Brief in accordance with Rule 38.2 of the Rules of Appellate Procedure.

Unless otherwise indicated, Kelly Wayne Lamon will be referred to as "Lamon" or "the appellant." The State of Texas will be referred to as "the State" or "the appellee."

## STATEMENT OF FACTS

### Factual Background.

On May 4, 2014, Sergeant Phyllis Owens (Owens), who was considered a "certified jailer and dispatch[er]" and had 27 years of experience with the Red River County Sheriff's Department, was working at the jail. *See* RR, Vol. 6, pg. 28. Owens was a public servant. *See* RR, Vol. 6, pgs. 28, 41. Owens was wearing a jail uniform shirt that had the label, "Red River County Sheriff's Department" on it. *See* RR, Vol. 6, pg. 42.

On May 4th, Owens was acting as a dispatcher and was sitting in the Red River County jail dispatch office. *See* RR, Vol. 6, pgs. 29, 113-114. Owens was performing dispatch and telecommunication duties. *See* RR, Vol. 6, pg. 30. The dispatch office was located at 500 North Cedar in Red River County, Texas. *See* RR, Vol. 6, pgs. 29, 39, 44.

On May 4th, Owens saw Lamon when he came into the dispatch office. *See* RR, Vol. 6, pgs. 29, 51. Lamon came through a door, that was partially open to the dispatch office. *See* RR, Vol. 6, pg. 54.

Lamon "attacked" (RR, Vol. 6, pg. 29) and "assaulted" Owens. *See* RR, Vol. 6, pgs. 39, 85. Owens began calling for other officers. *See* RR, Vol. 6, pg. 36. Lamon was choking her out. *See* RR, Vol. 6, pgs. 39, 65.

Owens felt like she "wasn't going to make it. . . . I just -- I felt -- I lost consciousness. I mean, I couldn't breathe because pressure was applied to my throat. I was choking, and I just -- it was terrifying." *See* RR, Vol. 6, pg. 35. It caused pain to her neck and pain to her throat. *See* RR, Vol. 6, pg. 39.

At about that time, the non-violent and minimum security inmates who were designated as "trusties," were working in the kitchen at the time that the incident occurred. *See* RR, Vol. 6, pgs. 37-38. They were preparing supper. *See* RR, Vol. 6, pgs. 38, 49.

On May 4th, Byron Ray Alford, Jr. ("Bubba") was an inmate in the jail and had been a "trusty" for about 14 months. *See* RR, Vol. 6, pgs. 67, 69, 78. Bubba, age 39, was in jail for drugs (methamphetamine) and had been indicted for a state-jail felony. *See* RR, Vol. 6, pgs. 75-76. Bubba was convicted of the felony before any of the May 4th events happened. *See* RR, Vol. 6, pg. 76. Later, Bubba served 2 months in the state jail. *See* RR, Vol. 6, pg. 77.

On that evening, Bubba was in the kitchen, making dinner trays. *See* RR, Vol. 6, pg. 70. "It was right before dinner, about five o'clock." *See* RR, Vol. 6, pg. 70.

At some point, Bubba heard Ms. Marsha Reed (Reed) holler get back.

*See* RR, Vol. 6, pgs. 70-71.   Reed was hollering to get back and pointing to 2 other inmates, Dylan Childers and Shane Kinslow.[1]

Bubba ran around the corner to see what was happening.   *See* RR, Vol. 6, pg. 70.   Bubba was telling other inmates to get back as they were coming out of the library after church.   *See* RR, Vol. 6, pgs. 71-72.   When he did, Reed said, "go help Ms. Phyllis, two of them got by her."   *See* RR, Vol. 6, pgs. 71-72.

Bubba went around to dispatch.   *See* RR, Vol. 6, pg. 72.   When Bubba rounded the corner, he was the first one through the door.   *See* RR, Vol. 6, pgs. 72-73.   Bubba saw Gary Field was knocking over stuff and trying to hit "the button" to open the door to get out.   *See* RR, Vol. 6, pgs. 72-73.

Bubba saw "Ms. Phyllis" being choked.   *See* RR, Vol. 6, pg. 73.   "She was down on one knee about choked out."   *See* RR, Vol. 6, pg. 73.   Bubba saw her eyes, and "[t]hey was bugged out, and she was rolling back."   *See* RR, Vol. 6, pg. 75.

Bubba grabbed his arm and pried them away.   *See* RR, Vol. 6, pg. 73.   It was not easy to get Lamon off of her.   *See* RR, Vol. 6, pg. 73.

---

[1] *See Kinslow v. State*, No. 06-14-00083-CR, 2014 Tex. App. LEXIS 13619, 2014 WL 7204556 (Tex. App.--Texarkana December 14, 2014, no pet.) (mem. op., not designated for publication).

In addition to Bubba, Brice Franks and Tracy Morgan were the "trusties" that were holding Lamon down. *See* RR, Vol. 6, pgs. 37, 74. "They're holding him securely." *See* RR, Vol. 6, pg. 57. Finally, Lamon said, "he had enough, and there wasn't no -- he said he give up." *See* RR, Vol. 6, pg. 74. "Ms. Phyllis" was "real shook up." *See* RR, Vol. 6, pg. 74.

Lamon was later escorted out by police, who took him down the hallway and into the detox secured area. *See* RR, Vol. 6, pgs. 38-39, 60. The Clarksville Police Department was dealing with Lamon, not the sheriff's department. *See* RR, Vol. 6, pg. 59.

Later, Owens went to the emergency room, East Texas Medical Center. *See* RR, Vol. 6, pg. 56. They made an assessment and prescribed medication for pain. *See* RR, Vol. 6, pg. 56.

That evening, Owens had "lots of soreness around her neck and shoulder." *See* RR, Vol. 6, pg. 40. Her right arm was bruised. It was medically determined that she had a strained shoulder and neck. *See* RR, Vol. 6, pg. 40.

**<u>Indictment and Jury Trial</u>.**

On June 19, 2014, a grand jury in Red River County returned an original indictment that charged Lamon with the third-degree felony offense of assault on a public servant. *See* CR, pgs. 6-7. In due course, the trial

court proceeded with a jury trial on December 15, 2014 beginning with voir dire examination. *See* RR, Vol. 5, pgs. 1, 4.

After voir dire, the trial court impaneled a twelve-member jury: William Crock, Susan Leddy, Vicki Reep, Julia Clifton, Donna Miller, Lillie Rhea, Linda Dilbeck, Ellen Bristow, Marilyn Storey, Joan Winchell, Vickie Glass and Michael Yaross. *See* RR, Vol. 5, pgs. 59-60; CR, pg. 59. The jury was sworn in by the trial court and dismissed for the day. *See* RR, Vol. 5, pgs. 60-61.

**Removal of Juror.**

Within twenty minutes after leaving the courthouse (RR, Vol. 6, pg. 6), one of the jurors came back into the courtroom and addressed the district clerk. *See* RR, Vol. 6, pg. 5. Apparently, the juror told her that he felt like he may be unable to serve on the jury. *See* RR, Vol. 6, pg. 5. The district clerk brought the juror over to the trial judge, who basically told him to be back in the morning. *See* RR, Vol. 6, pgs. 5-6.

On the following morning of December 16, 2014 (RR, Vol. 6, pg. 1), the trial court called juror Y-A-R-O-S-S and asked, "tell me why you think you can't serve on this jury." *See* RR, Vol. 6, pg. 7. After an exchange between juror Yaross and the prosecutor and defense counsel (RR, Vol. 6, pgs. 7-11), the trial court ruled that "he just can't fully and fairly perform his

functions as a juror, and I'm going to release him from service at this time." *See* RR, Vol. 6, pg. 12. The trial judge "removed" juror number 12, Michael Yaross, "after examining by Atty's and Judge." *See* CR, pg. 59.

After further discussion (RR, Vol. 6, pgs. 12-18), the trial judge decided, "we're going to go ahead." *See* RR, Vol. 6, pg. 18. Subsequently, the State arraigned the defendant by reading the indictment. *See* RR, Vol. 6, pgs. 23-24. Lamon entered a plea of "not guilty." *See* RR, Vol. 6, pg. 24.

During the guilt-innocence phase of the trial, the State called two (2) witnesses, "Ms. Phyllis" Owens and Bubba. Following their testimony, the State rested. *See* RR, Vol. 6, pg. 81.

Lamon moved the trial court for an instructed or directed verdict. *See* RR, Vol. 6, pgs. 82-83. The trial court denied the motion. *See* RR, Vol. 6, pg. 83.

The defense called Michael Childers as a witness; and following his testimony (RR, Vol. 6, pgs. 84-87), Lamon took the stand and began his testimony. *See* RR, Vol. 6, pgs. 91-102. The State cross-examined Lamon. *See* RR, Vol. 6, pgs. 102-112. Upon the conclusion of this testimony, Lamon rested. *See* RR, Vol. 6, pg. 112.

The State called Owens as a rebuttal witness. *See* RR, Vol. 6, pg. 113. After brief testimony from Owens, the State rested and closed. *See*

RR, Vol. 6, pg. 116.  The defense rested and closed.  *See* RR, Vol. 6, pg. 116.

Following a charge conference (RR, Vol. 6, pgs. 116-125), the trial court heard no objections to its jury charge.  *See* RR, Vol. 6, pgs. 125-126.  The trial court then read its charge to the jury.  *See* RR, Vol. 6, pgs. 127-133; CR, pgs. 60-62.

After closing arguments (RR, Vol. 6, pgs. 133-139), the jury retired to begin its deliberations.  *See* RR, Vol. 6, pg. 139.  Upon the conclusion of its deliberations, the jury returned a unanimous verdict.  *See* RR, Vol. 6, pg. 142.  By its verdict, the jury found Lamon guilty of assault of a public servant, as charged in the indictment.  *See* RR, Vol. 6, pgs. 142-143; CR, pg. 63.

### Punishment Phase.

Afterwards, the State proceeded with the punishment phase of the trial by waiving opening argument and by reading a notice of intent to seek enhanced sentence as a repeat offender.  *See* RR, Vol. 7, pgs. 6-7.  Lamon entered a plea of "not true."  *See* RR, Vol. 7, pg. 7.

As its first witness, the State called Chris Brooks, an investigator with the Lamar County District Attorney's office and a fingerprint expert.  *See* RR, Vol. 7, pg. 7.  Over objection, the trial court later admitted State's

Exhibits 1 and 2.  *See* RR, Vol. 7, pg. 11.  *See also* RR, Vol. 9 (exhibits).

As its next witness, the State called Shania Lamon.  *See* RR, Vol. 7, pg. 20.  Following her testimony (RR, Vol. 7, pgs. 20-35), the State called Michael Pace, an investigator with the Sheriff's Office.  *See* RR, Vol. 7, pgs. 35-36.  Following his testimony, the State rested and closed.  *See* RR, Vol. 7, pg. 43.

On the following day of December 17, 2014 (RR, Vol. 8, pg. 1), the defense called James Lee, the grandfather of Lamon.  *See* RR, Vol. 8, pg. 5. Following his testimony (RR, Vol. 8, pgs. 5-12), the defense called Kim Stribling.  *See* RR, Vol. 8, pg. 12.  After her testimony, the trial court heard no objections to its punishment charge.  *See* RR, Vol. 8, pgs. 20-21.

The trial court then read its punishment charge to the jury.  *See* RR, Vol. 8, pgs. 22-29; CR, pgs. 66-70.  Following closing arguments (RR, Vol. 8, pgs. 29-38, the jury retired to begin its deliberations.  *See* RR, Vol. 8, pg. 38.  Upon the conclusion of its deliberations, the jury returned a unanimous verdict.  *See* RR, Vol. 8, pg. 45.  By its verdict, the jury found the prior conviction to have been proved "true" and assessed his punishment at twelve (12) years confinement in the Institutional Division of the Texas Department of Criminal Justice.  *See* RR, Vol. 8, pg. 48; CR, pgs. 71-72.

On December 17, 2014, the trial court signed its final judgment of

conviction. *See* CR, pgs. 85-86. On January 5, 2015, Lamon timely filed his notice of appeal. *See* CR, pgs. 94-95.

**Proceedings in this Court of Appeals.**

On or about December 30, 2014, Lamon filed his notice of appeal in this Court. On the same day, Lamon filed the docketing statement.

On or about February 17, 2015, the official court reporter filed the Reporter's Record. The District Clerk of Red River County filed the Clerk's Record on or about February 20, 2015.

On or about March 11, 2015, Lamon filed his brief. The State will be filing its brief on or before the current due date of April 10, 2015.

# SUMMARY OF THE ARGUMENT

By this appeal, Lamon brought a single issue, in which, he questioned whether a juror's issue regarding men attacking women made him mentally impaired to the level that it hindered his ability to perform his duties as a juror. Regardless of the factual basis underlying this question, the trial court removed juror Yaross and proceeded to trial with eleven jurors. That decision by the trial court should not be an abuse of discretion.

In the present case, the trial court did not abuse its discretion in removing juror Yaross and in proceeding to trial with eleven jurors because that option was available to the trial court, and that option was a less drastic alternative to the appellant's, Lamon's, requested mistrial. Because the trial court exercised its sound discretion in proceeding to trial with eleven jurors, this Court should overrule Lamon's sole issue/point of error on appeal.

Even assuming the trial court abused its discretion in removing juror Yaross and/or erred in finding that juror Yaross was "disabled" or "unable to perform," the State will argue, in the alternative, that this appellate record should not reveal any harm.

## ARGUMENT AND AUTHORITIES

**SOLE ISSUE PRESENTED IN REPLY:** THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN REMOVING JUROR YAROSS AND IN PROCEEDING TO TRIAL WITH ELEVEN JURORS AS A LESS DRASTIC ALTERNATIVE TO THE APPELLANT'S REQUESTED MISTRIAL; ALTERNATIVELY, THE RECORD DID NOT REVEAL HARM.

A. **Introduction.**

With his sole issue, Lamon questioned whether a juror's issue regarding men attacking women made him mentally impaired to the level that it hindered his ability to perform his duties as a juror. *See* Appellant's Brief, pgs. 7, 10, 11. In this case, the trial court removed juror Yaross.

B. **Standard of Review: Abuse of Discretion.**

The trial court has discretion to determine whether a juror has become disabled and to seat an alternate juror. *See Whitehead v. State*, 437 S.W.3d 547, 554 (Tex. App.---Texarkana 2014, pet. ref'd) (citing *Scales v. State*, 380 S.W.3d 780, 783 (Tex. Crim. App. 2012). In deciding to remove a juror, the trial court must make a finding, sufficiently supported by the record, that the juror was disqualified or unable to perform the duties of a juror. *See id.* This Court may not substitute its judgment for that of the trial court. *See id.* Instead, this Court should assess whether, after viewing the evidence in the light most favorable to the trial court's ruling, the ruling was arbitrary or unreasonable. *See Whitehead*, 437 S.W.3d at 554 (citing *Scales*, 380

21

S.W.3d at 784.  The ruling must be upheld if it within the "zone of reasonable disagreement."  *See id*.  Absent an abuse of discretion, no reversible error will be found.  *See id*.

C.  **Law Regarding Removal of a Juror:  Article 36.29 and Article 33.011(b) of the Texas Code of Criminal Procedure.**

Article 36.29 of the Texas Code of Criminal Procedure provided in pertinent part:

Art. 36.29.  If a Juror Dies or Becomes Disabled

(a)  Not less than twelve jurors can render and return a verdict in a felony case.  It must be concurred in by each juror and signed by the foreman.  Except as provided in Subsection (b), however, after the trial of any felony case begins and a juror dies or, as determined by the judge, becomes disabled from sitting at any time before the charge of the court is read to the jury, the remainder of the jury shall have the power to render the verdict; but when the verdict shall be rendered by less than the whole number, it shall be signed by every member of the jury concurring in it.

\*     \*     \*

(c)  After the charge of the court is read to the jury, if a juror becomes so sick as to prevent the continuance of the juror's duty and an alternate juror is not available, or if any accident of circumstance occurs to prevent the jury from being kept together under circumstances under which the law or the instructions of the court requires that the jury be kept together, the jury shall be discharged, except that on agreement on the record by the defendant, the defendant's counsel, and the attorney representing the state 11 members of a jury may render a verdict and, if punishment is to be assessed by the jury, assess punishment. If a verdict is rendered by less than the whole number of the jury, each member of the jury shall sign the

verdict.

*See* Tex. Code Crim. Proc. Ann. art. 36.29(a), (c) (West Supp. 2014).

In addition, article 33.011(b) of the Texas Code of Criminal Procedure provided the following:

> Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury renders a verdict on the guilt or innocence of the defendant and, if applicable, the amount of punishment, become or are found to be unable or disqualified to perform their duties or are found by the court on agreement of the parties to have good cause for not performing their duties. Alternate jurors shall be drawn and selected in the same manner, shall have the same qualifications, shall be subject to the same examination and challenges, shall take the same oath, and shall have the same functions, powers, facilities, security, and privileges as regular jurors. An alternate juror who does not replace a regular juror shall be discharged after the jury has rendered a verdict on the guilt or innocence of the defendant and, if applicable, the amount of punishment.

*See* Tex. Code Crim. Proc. Ann. art. 33.011(b) (West Supp. 2014).

Although the statute does not define "unable to perform," this Court held in *Whitehead* that appellate courts have concluded that "unable" as used in Article 33.011 is indistinguishable from "disabled" as used in Article 36.29. *See Whitehead*, 437 S.W.3d at 554 (citing *Scales*, 380 S.W.3d at 783; *Sandoval v. State*, 409 S.W.3d 239, 279 (Tex. App.--Austin 2013, no pet.); *Sneed v. State*, 209 S.W.3d 782, 786 (Tex. App.--Texarkana 2006, pet. ref'd) ("one must strain to recognize real differences in the meaning of the two words in this context")). "Bias for or against any of the law applicable

23

to the case, while an appropriate basis on which to challenge a member of the venire for cause, does not render a member of the sworn jury panel mentally impaired such that he is disabled as envisioned by Art. 36.29(a)." *See Landrum v. State*, 788 S.W.2d 577, 579 (Tex. Crim. App. 1990) (citing *Carrillo v. State*, 597 S.W.2d 569 (Tex. Crim. App. 1980)).

D.      **Application of Law to the Present Facts and Circumstances.**

1.      **The Trial Court Did Not Abuse its Discretion in Proceeding to Trial with Eleven Jurors.**

In the present case, the trial court made a finding on the record that the juror (i.e. Juror Yaross) "can't fully and fairly perform his functions as a juror, and I'm going to release him from service at this time."   *See* RR, Vol. 6, pg. 12.   To this ruling, Lamon presented no objection.   *See* Tex. R. App. P. 33.1(a).   Yet, on appeal, Lamon questioned the factual basis for this ruling.

By this ruling, the trial court essentially found that the juror was "unable to perform" under article 33.011(b), as opposed to "disabled" under article 36.29.   *Compare* Tex. Code Crim. Proc. Ann. art. 33.011(b) (West Supp. 2014) *with* Tex. Code Crim. Proc. Ann. art. 36.29(a) (West Supp. 2014).   Under article 33.011(b), however, an alternate juror was not available to the trial court, as evidenced by the following exchange:

THE COURT:  Well, I think one of the things, and it's

probably maybe just easier stated on the record, I think there was maybe 124 people summoned yesterday.  I think right at 40 showed up.  I took excuses on seven or eight, but any way, the point being, we had 34 --

MR. TURNER:   We had 36 jurors.

*See* RR, Vol. 6, pg. 13; CR, pg. 53.   The trial judge then continued:

THE COURT:  We had 36 prospective jurors.  Four of them I struck for cause.  So we were down to 32.  Now, it did cross the Court's mind to reduce the amount of strikes to give the State, but both sides have kind of hinted this trial they think was going to take maybe one day.  So I didn't do that.  Like I said, I was telling Mel this morning, the only law I can ever quote in Murphy's law, and I forgot it for just a moment yesterday.  And that's why we're in the shape we're in.  But give me just a minute to read through this *Hill* case,[2] and I'd rather acquiesce to the defense's request for a continuance.  I can try it in January, and I've already called Bowie County.  I've got a week available in January.

MR. TURNER:   And my client prefers, and I don't guess he can insist, but he would urge the Court to --

THE COURT:   The word insist don't bother me.  I don't mind.   Val, what's the State's position?

MR. VARLEY:   Well, Judge, if we need to go forward, if that *Hill* case says we shall go forward, then I think we better go forward.

THE COURT:   Give me just a few minutes to look at it.

MR. TURNER:   Well, it occurs to me that my client can waive any error on the record and that we can't -- if we cannot -- if we can waive it and can't raise it on appeal, then --

---

[2] *Hill v. State*, 90 S.W.3d 308 (Tex. Crim. App. 2002).

RR, Vol. 6, pgs. 13-14.   An alternate juror was not be chosen.   CR, pg. 59.

a. **An Alternate Juror Was Not Available.**

As set forth above, an alternate juror was not available to the trial court.   *See* RR, Vol. 6, pgs. 13-14.   So, the present case was not governed by article 33.011(b) and article 36.29(c).   *See Romero v. State*, 396 S.W.3d 136, 149-50 (Tex. App.--Houston [14th Dist.] 2013, no pet.).   Further, article 36.29(c) did not govern this situation because the charge of the court had not yet been read to the jury.   *See* Tex. Code Crim. Proc. Ann. art. 36.29(c) (West Supp. 2014) ("[a]fter the charge of the court is read to the jury, . . .").

b. **A Previously-Dismissed Venire Member Was Not Available.**

Also, a previously-dismissed venire member was not available to the trial court, so the present case was not governed by *Hegar v. State*, 11 S.W.3d 290 (Tex. App.--Houston [1st Dist.] 1999, no pet.).   Under *Hegar*, the trial court was required to give the defendant the choice between eleven jurors or a mistrial when a disabled juror was dismissed and the trial court sought to empanel a previously dismissed venire member.   *See Castro v. State*, 233 S.W.3d 46, 50 (Tex. App.--Houston [1st Dist.] 2007, no pet.) (citing *Hegar*, 11 S.W.3d at 294).

c. **The Trial Court Did Not Abuse its Discretion by Proceeding with a Less Drastic Alternative to a Mistrial.**

In the present case, the trial court heard and considered Lamon's

argument for a mistrial, as follows:

>MR. TURNER: It occurs to me, Judge, that the Court has wide latitude in granting a mistrial during the course of a case. It would seem to me that with my client's consent and urging that the Court can simply declare a mistrial and retry the case in January. I cannot -- it does not seem reasonable to me that an appellate Court can take all the discretion from a Trial Court in a matter like this. I do not see, on reflection, that this is any kind of reversible error, particularly since my client and I will be happy to put him on the stand and testify under oath that this is what he wants. I do not see that there is any error in the Court granting a mistrial because of what happened and letting us retry this case in January. We wouldn't be here today if Mr. Yaross had respond (sic?) -- I asked on voir dire is there any reason that you should not -- somebody cannot be fair or could not serve on this jury. Had he acknowledged that with the other strikes for cause, we would not have had sufficient number of people to select a jury. So I understand, but it just occurs to me that there is nothing improper.

>THE COURT: Dave, and I think when I first thought about what happened yesterday afternoon on the drive back to Bowie County yesterday, I was thinking along the same lines. Let me read you just two sentences out of this opinion, those which I think require me. It says, in this case, and they're talking about this *Hill* case, proceeding to trial with 11 jurors would not have been -- it would not have been impossible to arrive at a fair verdict or continue with trial because Article 36.29(a) required it. Likewise, it would not present automatic reversible error on appeal. This is the part that I'm paying attention to, because the procedure is not just authorized but compelled by the statute. So I read that as telling me I have to proceed.

*See* RR, Vol. 6, pgs. 15-17.

From the exchange above, the trial court was obviously concerned

with the granting of a mistrial because it would "present automatic reversible

error on appeal." *See* RR, Vol. 6, pg. 16. That was why the trial court, in the exercise of its discretion, proceeded with eleven jurors as a less drastic alternative to a mistrial and denied Lamon's oral motion over his "exception on the record, [and] [his] objection to continuing the case . . . over to another date." *See* RR, Vol. 6, pg. 18. As explained above, the trial court had no alternate juror and no previously-dismissed venire member to replace juror Yaross. *See Romero*, 396 S.W.3d at 149-50; Tex. Code Crim. Proc. Ann. art. 36.29(c); *Castro*, 233 S.W.3d at 50. So, the trial judge denied Lamon's oral motion for mistrial and proceeded with eleven jurors because "the procedure [was] not just authorized but compelled by statute." *See* RR, Vol. 6, pg. 17. Further, the trial judge didn't "think the juror [Yaross] was excused erroneously."[3] *See* RR, Vol. 6, pg. 17.

Under these circumstances, the trial judge decided to proceed with eleven jurors (RR, Vol. 6, pg. 81), and that ruling should not be disturbed for an abuse of discretion because it was within the zone of reasonable disagreement as a less drastic alternative to Lamon's oral motion for mistrial. *See Ricketts v. State*, 89 S.W.3d 312, 318 (Tex. App.--Fort Worth 2002, pet. ref'd) ("Notably, it is within the trial court's sound discretion to

---

[3] To this finding by the trial court, the appellant, Lamon, presented no objection to the trial court's determination of the juror being "disabled" or "unable to serve." *See* Tex. R. App. P. 33.1(a). Rather, the appellant, Lamon, moved for a mistrial.

consider less drastic alternatives to a mistrial.").  When a trial judge grants a mistrial despite the available option of less drastic alternatives, there is no "manifest necessity" prompting a mistrial and an appellate court will find an abuse of discretion.  *See id*.

As applied here, no abuse of discretion occurred because the trial judge had the available option of a less drastic alternative (i.e. proceed with eleven jurors), and it was within the zone of reasonable disagreement to proceed with that available option.  Further, the trial judge felt "compelled by statute" (RR, Vol. 6, pg. 17) to proceed with eleven jurors because "it would not have been impossible to arrive at a fair verdict or continue with trial."  *See* RR, Vol. 6, pg. 16.  The trial judge said, "they're talking about this *Hill* case."  *See* RR, Vol. 6, pg. 16.

### (1) *Hill v. State*, 90 S.W.3d 308 (Tex. Crim. App. 2002).

In *Hill*, the case upon which the trial judge relied, voir dire began in a capital murder case on a Tuesday morning and concluded the following morning.  *See Hill*, 90 S.W.3d at 310.  The jury was sworn in on Wednesday and told to return the next day for the trial to begin.  *See id*.  On Wednesday afternoon, one of the jurors called the court "hysterical," saying she couldn't continue."  *See id*.  This juror explained that she suffered from "debilitating panic attacks when placed under stressful

29

situations" and should not "participate in jury decision-making due to the emotional stress." *See id.* A physician's note stated that the juror suffered from "generalized anxiety disorder and possible panic disorder with stressful situations." *See id.*

After a brief hearing, the trial court, on its own motion, declared a mistrial. *See id.* Both the State and the defendant objected, and the trial court overruled the objections. *See id.* Subsequently, the defendant filed a motion to dismiss on the basis of double jeopardy, which the trial court denied. *See id* at 310-11. A second voir dire began, with a second jury being sworn in, and the trial commenced. *See id* at 311. The defendant, Hill, was convicted of capital murder and sentenced to life in prison. *See id.*

On appeal, the appellant, Hill, argued that the second prosecution violated double jeopardy. *See id.* In an unpublished opinion, the court of appeals agreed and reversed the conviction. *See id.* The court of appeals held that the record did not reflect that the judge had considered less drastic alternatives to a mistrial, such as proceeding to trial with eleven jurors. *See id.* The Texas Court of Criminal Appeals granted the State's petition for review. *See id.*

In *Hill*, the Court of Criminal Appeals held that the State could not

satisfy its burden of proving manifest necessity for the mistrial because the record did not reflect that the trial court considered less drastic alternatives. *See id*. at 314. In *Hill*, the Court of Criminal Appeals concluded that the record did not demonstrate manifest necessity for a mistrial. *See id*.

In *Hill*, the Court reasoned that to show manifest necessity for the mistrial, the State would have to show that there was no less drastic alternative available. *See id*. In *Hill*, the Court concluded that "proceeding to trial with eleven jurors was not just an available alternative in this case[;] [i]t was a mandatory alternative under our constitutional, statutory, and case law." *See id*. at 315. Regardless of consent, the judge was required to proceed to trial with eleven jurors. *See id*.

### (2) **Subsequent Cases to *Hill*, 90 S.W.3d at 315.**

In an unpublished opinion, the Tyler Court of Appeals has held that "[o]ne example of a less drastic alternative to a mistrial when a juror becomes unable to serve is to continue with less than twelve jurors." *See Joseph M. Martel v. The State of Texas*, No. 12-07-00034, 2008 WL 257367, 2008 Tex. App. LEXIS 652, at * 6 (Tex. App.--Tyler January 31, 2008, no pet.) (mem. op., not designated for publication). In *Martel*, the Court held that "[i]n fact, it is reversible error for a trial court not to continue with eleven jurors in such a situation." *See id* (citing *Hill*, 90 S.W.3d at 315).

In another unpublished opinion, the Eastland Court of Appeals held that "[w]here, as here, no alternate jurors have been selected, if a juror dies, or, as determined by the trial court, becomes disabled from sitting as a juror at any time before the charge of the court is read to the jury, the remainder of the jury shall have the power to render the verdict." *See Tracy Lee Thurman v. The State of Texas*, No. 11-10-00086-CR, 2011 WL 3890564, 2011 Tex. App. LEXIS 7225, at * 5 (Tex. App.--Eastland August 31, 2011, no pet.) (mem. op., not designated for publication) (citing Article 36.29(a)). In *Thurman*, the Court held that "the trial court did not err by proceeding with the trial with the remaining eleven jurors." *See Thurman*, 2011 Tex. App. LEXIS 7225, at * 6.

Under *Hill* and subsequent cases, the trial court did not abuse its discretion in proceeding with eleven jurors as a less drastic alternative to the appellant's requested mistrial. *See Hill*, 90 S.W.3d at 315; *Martel*, 2008 Tex. App. LEXIS 652, at * 6; *Thurman*, 2011 Tex. App. LEXIS 7225, at * 5. This Court should hold accordingly. Because the trial court did not abuse its discretion, Lamon's sole issue/point of error should be overruled.

2.     **Even if the Trial Court Erred in Removing Juror Yaross, the Record Did Not Reveal Harm.**

Even assuming the trial court abused its discretion in removing juror Yaross and/or erred in finding that juror Yaross was "disabled" or "unable to

perform," the next step would be to determine whether the error resulted in harm. *See Whitehead*, 437 S.W.3d at 556; *Chavez v. State*, 134 S.W.3d 244, 245 (Tex. App.--Amarillo 2003, pet. ref'd) (on remand). The burden to demonstrate whether appellant was harmed by trial court error did not rest on appellant or the State. *See Chavez*, 134 S.W.3d at 245.

Because Lamon complained of a statutory violation and did not claim a violation of his constitutional rights, any harm analysis should be conducted pursuant to Rule 44.2(b) of the Texas Rules of Appellate Procedure. *See Whitehead*, 437 S.W.3d at 556. Rule 44.2(b) provided that an appellate court must disregard a nonconstitutional error that does not affect a criminal defendant's "substantial rights." *See id*; *Chavez*, 134 S.W.3d at 245. An error affects a substantial right of the defendant when the error has a substantial and injurious effect or influence in determining the jury's verdict. *See Whitehead*, 437 S.W.3d at 556 (citing *Scales*, 380 S.W.3d at 786).

To support his contention of harmful error, Lamon likened the erroneous removal of a juror to the erroneous grant of a challenge for cause. *See* Appellant's Brief, pg. 17 (citing *Ransom v. State*, 920 S.W.2d 288 (Tex. Crim. App. 1996)). Beyond that in his brief, Lamon provided no further argument or authorities, but a review of this record should not reveal any

harm.

This record should not reveal any harm because the trial court removed juror Yaross before he could have any effect or influence on the jury's verdict. In the present case, the trial court removed juror Yaross before the remaining eleven members of the jury heard any testimony, or considered any evidence. So, juror Yaross could not have had any effect or influence on the jury's verdict during the trial. *See* Tex. R. App. P. 44.2(b).

Here, unlike *Scales*, the jury was not seemingly deadlocked and did not return a guilty verdict until after the trial court removed the "disabled" juror. *See Scales*, 380 S.W.3d at 786-87. Here, the trial court removed juror Yaross before the jury commenced any deliberations.

Further, a review of this record disclosed that juror Yaross was concerned about the punishment phase (RR, Vol. 6, pgs. 9, 10) and "if we do find that the evidence is against him, what will I feel then." *See* RR, Vol. 6, pg. 9. As juror Yaross responded to questions from Lamon's trial counsel, he said, "I got a strike against you." *See* RR, Vol. 6, pg. 11. In essence, juror Yaross seemed unable to consider a minimum range of punishment. *See* RR, Vol. 6, pg. 10. Thus, the trial court's removal of juror Yaross might have been beneficial to Lamon, and not harmful, because juror Yaross did not participate in the punishment phase and did not

deliberate with the other jurors in assessing Lamon's punishment at twelve (12) years. So, the removal of juror Yaross did not have any effect or influence on the jury's assessment of punishment. As a final consideration, the jury's assessment of punishment was within the applicable range of punishment (2 to 20 years) and twelve (12) years of confinement was certainly not the maximum punishment.

In conclusion, a review of this record should not reveal any harm. *See* Tex. R. App. P. 44.2(b). Accordingly, the appellant's, Lamon's, sole issue/point of error should be overruled and the final judgment of conviction should be affirmed.

## **PRAYER**

WHEREFORE, PREMISES CONSIDERED, the State of Texas prays that upon final submission upon oral argument, this Court should affirm the trial court's final judgment of conviction in all respects; adjudge court costs against the appellant and for such other and further relief, both at law and in equity, to which the State may be justly and legally entitled.

Respectfully submitted,

Val J. Varley, County and District Attorney
Red River County Courthouse
400 North Walnut Street
Clarksville, Texas     75426-4012
(903) 427-2009
(903) 427-5316 (fax)
valvarley@valornet.com

By:   /s/ Val Varley
        Val J. Varley, County-District Attorney
        SBN# 20496580

**ATTORNEYS FOR THE STATE OF TEXAS**

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, the "State's Brief" was a computer-generated document and contained <u>7,107</u> words--not including the Appendix (not applicable here).   The undersigned attorney certified that he relied on the word count of the computer program, which was used to prepare this document.

<u>/s/ Val Varley</u>
Val J. Varley
valvarley@valornet.com

## CERTIFICATE OF SERVICE

This is to certify that in accordance with Tex. R. App. P. 9.5, a true copy of the "Appellee's (State's) Brief" has been served on the 9TH day of April, 2015 upon the following:

Troy Hornsby
*Miller, James, Miller & Hornsby, L.L.P.*
1725 Galleria Oaks Drive
Texarkana, TX    75503
troy.hornsby@gmail.com

<u>/s/Val Varley</u>
Val J. Varley
valvarley@valornet.com