

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-17-00193-CR
_____

NORMAN O'NEAL COPELAND, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 4th District Court
Rusk County, Texas
Trial Court No. CR16-289

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

Following a bench trial, Norman O'Neal Copeland was convicted of continuous sexual abuse of a child under the age of fourteen. He was sentenced to life imprisonment without the possibility of parole. On appeal, Copeland argues (1) that the trial court erred in overruling his motion to quash the State's indictment and (2) that the trial court erred in overruling his motion to suppress statements made during a recorded police interrogation.

Because we find that the State's indictment provided Copeland with sufficient notice of the charge against him, we conclude that the trial court properly overruled Copeland's motion to quash. We further conclude that the trial court did not abuse its discretion in finding that Copeland's confession was the result of noncustodial interrogation. However, we find that the trial court's judgment must be modified to correctly reflect Copeland's plea of not guilty. As modified, we affirm the trial court's judgment.

## I.       Copeland's Motion to Quash the State's Indictment Was Properly Overruled

The State's indictment identified the charge as "SEX ABUSE OF A CHILD CONTINUOUS: VICTIM UNDER 14, a F1 Felony." Specifically, the indictment alleged that Copeland,

> during a period that was 30 or more days in duration, to-wit: from on or about the 26th day of September, 2011 through the 2nd day of September, 2016, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against [B.H.[1]] a child younger than 14 years of age, namely, by intentionally and knowingly causing the penetration of the female sexual organ of the victim, [B.H.] by the defendant's sexual organ and the victim, [B.H.] was then and there under the age of 14 years.

---

[1]We will refer to the initials of the minor victim to protect the child's identity. *See* TEX. R. APP. P. 9.10(a)(3).

2

Prior to trial, Copeland filed a motion to quash the State's indictment and argued that "the 30-day period upon which the state relie[d] extend[ed] past the period when the alleged victim was about the age of 14 years." On appeal, Copeland argues that the trial court erred in denying his motion to quash the indictment on the ground that "any act(s) committed by Appellant against complainant beyond her fourteenth birthday could not be used to convict Appellant" of continuous sexual abuse of a child under fourteen. Because the indictment provided Copeland with adequate notice, we disagree.

"The Texas Constitution and Texas Code of Criminal Procedure require that an indictment provide an accused with adequate notice." *State v. Brown*, 314 S.W.3d 487, 492 (Tex. App.— Texarkana 2010, no pet.) (citing TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.05 (West 2005)). "This constitutional mandate requires that the charging instrument convey adequate notice from which the accused may prepare his or her defense." *Id.* "Thus, to ensure proper notice, 'the indictment must be specific enough to inform the defendant of the nature of the accusations against him.'" *Smith v. State*, 494 S.W.3d 243, 248 (Tex. App.—Texarkana 2015, no pet.) (quoting *Smith v. State*, 297 S.W.3d 260, 267 (Tex. Crim. App. 2009)).

"[T]o comprise an [indictment] within the definition provided by the constitution, an instrument must charge: (1) a person; (2) with the commission of an offense." *Id.* (quoting *Mantooth v. State*, 269 S.W.3d 68, 72 (Tex. App.—Texarkana 2008, no pet.)). "[A] written instrument is an indictment or information under the Constitution if it accuses someone of a crime

3

with enough clarity and specificity to identify the penal statute under which the State intends to prosecute, even if the instrument is otherwise defective." *Id.* (quoting *Mantooth*, 269 S.W.3d at 72). "[T]he State need not allege facts that are merely evidentiary in nature." *Id.* at 250.

"The sufficiency of an indictment is a question of law reviewed de novo." *Brown*, 314 S.W.3d at 492 (citing *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004)). "In determining whether a defendant has sufficient notice to prepare his or her defense, we must determine whether the charging instrument fails to provide all the requisites of 'notice.'" *Id.* (citing *Olurebi v. State*, 870 S.W.2d 58, 61 (Tex. Crim. App. 1994)). "Subject to rare exceptions, not applicable here, an indictment which tracks the statutory language will satisfy constitutional and statutory notice requirements." *Id.* (citing *State v. Mays*, 967 S.W.2d 404, 406 (Tex. Crim. App. 1998)).

Section 21.02 of the Texas Penal Code states:

(b) A person commits an offense if:

(1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

(2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense. . . .

(c) For purposes of this section, "act of sexual abuse" means any act that is a violation of one or more of the following penal laws:

. . . .

(4) aggravated sexual assault under Section 22.021.

4

TEX. PENAL CODE ANN. § 21.02(b), (c) (West Supp. 2017).[2]  Under Section 22.021, a person commits aggravated sexual assault "if the person:  . . . regardless of whether the person knows the age of the child at the time of the offense, intentionally or knowingly . . . causes the penetration of the anus or sexual organ of a child by any means."  TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i) (West Supp. 2017).

We conclude that the indictment tracked the statutory language of Section 21.02.  Although the dates included in the State's indictment spanned a time period beyond B.H.'s fourteenth birthday, the indictment nevertheless alleged that (1) Copeland, (2) during a period that was thirty or more days in duration, (3) committed two or more acts of "penetration of the female sexual organ of . . . [B.H.] by the defendant's sexual organ," (4) at a time when Copeland was seventeen years of age or older and (5) when "[B.H.] was then and there under the age of 14 years." Additionally, the indictment specified that the crime alleged was continuous sexual assault of a child.  Thus, we conclude that the State's indictment provided Copeland with adequate notice of the nature of the accusations against him.  Because the trial court did not err in overruling Copeland's motion to quash, we overrule Copeland's first point of error.

## II.  The Trial Court Did Not Abuse Its Discretion in Overruling the Suppression Motion

Custodial interrogation places "'inherently compelling pressures' on the persons interrogated."  *Thompson v. Keohane*, 516 U.S. 99, 107 (quoting *Miranda v. Arizona*, 384 U.S.

---

[2]"A defendant may not be charged with more than one count under Subsection (b) if all of the specific acts of sexual abuse that are alleged to have been committed are alleged to have been committed against a single victim."  TEX. PENAL CODE ANN. § 21.02(f) (West Supp. 2017).

436, 467 (1966)). "Prior to any [custodial] questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney." *Coffey v. State*, 435 S.W.3d 834, 841 (Tex. App.—Texarkana 2014, pet. ref'd) (quoting *Miranda*, 384 U.S. at 444). "Under both the Federal constitutional standard and the Texas Confession Statute, evidence obtained as a result of a custodial interrogation is inadmissible unless the State proves the officer gave proper warnings and shows an affirmative waiver of rights by the accused."[3] *Id.* at 840 (quoting *Hutchison v. State*, 424 S.W.3d 164, 175 (Tex. App.—Texarkana 2014, no pet.)); *see Miranda*, 384 U.S. at 444; *Carter v. State*, 309 S.W.3d 31, 35–36 (Tex. Crim. App. 2010) ("Failure to provide the warnings and obtain a waiver prior to custodial questioning generally requires exclusion of statements obtained."); *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008).

Arguing that his initially voluntary interview escalated into a custodial interrogation, Copeland moved to suppress his unwarned statements. We review the circumstances of the interrogation to better gauge Copeland's argument.

---

[3]Article 38.22, Section 2, of the Texas Code of Criminal Procedure, requires an officer to warn a defendant that:

> (1)     he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;
> (2)     any statement he makes may be used as evidence against him in court;
> (3)     he has the right to have a lawyer present to advise him prior to and during any questioning;
> (4)     if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and
> (5)     he has the right to terminate the interview at any time . . . .

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a) (West Supp. 2017). Section 3 of this Article prohibits use of an accused's oral statement "made as a result of custodial interrogation . . . unless: . . . prior to the statement but during the recording the accused is given the warnings [listed above] and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning." TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a) (West Supp. 2017).

### A. The Circumstances of the Interrogation

Although Copeland filed a written motion to suppress his confession, the trial court did not rule on the issue prior to trial. Instead, the trial court first heard testimony from Roy Cavazoz, an investigator with the Rusk County Sheriff's Department, who testified that B.H. had alleged giving birth to a child fathered by Copeland. On hearing this news, Cavazoz testified that he called Copeland to see if he would come in for a voluntary interview. At that point, Copeland objected, re-urged his motion to suppress his confession, and took Cavazoz on voir dire.

According to Cavazoz, Copeland arrived for the interview in his own vehicle and "was not in custody, under arrest, or being detained." The interview was conducted in a closed, 8-by-10-foot room. Cavazoz further testified that he informed Copeland that he could leave at any time, that he never placed Copeland in handcuffs, and that Copeland left the interview in his own vehicle. However, Cavazoz admitted that he did not inform Copeland that he had the right to speak with a lawyer.

The recorded interview established that Copeland decided to speak with Cavazoz of his "own free will" and that, prior to questioning, Copeland understood that he was free to leave at any time. Cavazoz informed Copeland that he was investigating B.H.'s allegation of sexual abuse and that B.H. had claimed Copeland as the father of her child. Copeland initially denied ever sexually assaulting B.H. and said he had no idea why she would raise such allegations. Copeland maintained that B.H. was a "habitual liar." Cavazoz told Copeland that he wanted to compare his DNA with a sample obtained from B.H.'s baby, to which Copeland replied, "Okay. Let's go."

7

Cavazoz then told Copeland that he was giving him an opportunity to be truthful and assured him that he would not be going to jail that day. At that point in the interview, Cavazoz said, "I can tell, Mr. Copeland, just by the way you're acting, you've done this." At that point, Copeland confessed and informed Cavazoz that the sexual abuse had been going on for "a couple of years" approximately every two or three weeks.

## A.      Standard of Review

"An officer's obligation to administer *Miranda* warnings attaches . . . 'only where there has been such a restriction on a person's freedom as to render him "in custody."'" *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam)). Likewise, the Article 38.22 constraints on the use of an accused's statements apply only to custodial interrogations. *Wolfe v. State*, 917 S.W.2d 270, 282 (Tex. Crim. App. 1996). Thus, "[i]f an accused is not in custody when he makes a statement, then the question of voluntariness does not arise." *Id.* "Stationhouse questioning does not, in and of itself, constitute custody." *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996).

In *Thompson*, the United States Supreme Court clarified that determination of whether a suspect is in custody turns on (1) a factual determination of the circumstances surrounding the interrogation and (2) a legal determination of whether, under the factual circumstances, a reasonable person would feel that he was not free to terminate the questioning and leave. *Thompson*, 516 U.S. at 112. "[T]he ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Stansbury*, 511 U.S. at 322 (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)).

8

"We review a trial court's denial of a motion to suppress for an abuse of discretion." *Elrod v. State*, 533 S.W.3d 52, 55 (Tex. App.—Texarkana 2017, no pet.). The trial court is the "sole and exclusive trier of fact and judge of the credibility of the witnesses" and the evidence presented at a hearing on a motion to suppress, particularly where the motion is based on the voluntariness of a confession. *Delao v. State*, 235 S.W.3d 235, 238 (Tex. Crim. App. 2007); *Green v. State*, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996); *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Bizzarri v. State*, 492 S.W.2d 944, 946 (Tex. Crim. App. 1973). Thus, in reviewing the trial court's factual determination of the circumstances surrounding the interrogation, we give almost total deference to the trial court. *Martinez v. State*, 348 S.W.3d 919, 922–23 (Tex. Crim. App. 2011). However, because the question of whether a reasonable person would feel that he was not free to terminate the questioning and leave is a mixed question of law and fact that does not depend on the trial court's credibility determination, we employ a de novo standard when evaluating this question. *Thompson*, 516 U.S. 113–14; *State v. Saenz*, 411 S.W.3d 488, 490 (Tex. Crim. App. 2013).

## B.    Analysis

The State argues that Copeland's statement was voluntary because he came to the police station of his own volition, was told that he was free to leave, was not handcuffed or otherwise deprived of his freedom of movement, and left the station in his own vehicle. Yet, "the mere fact that an interrogation begins as noncustodial does not prevent custody from arising later; police conduct during the encounter may cause a consensual inquiry to escalate into custodial interrogation." *Dowthitt*, 931 S.W.2d at 255.

9

The Texas Court of Criminal Appeals has outlined four general situations which may constitute custody, including:

> (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave.

*Id.*; *State v. Ortiz*, 382 S.W.3d 367, 376 (Tex. Crim. App. 2012). Copeland argues that the third and fourth factors apply.[4]

While the first three factors "indicate that the restriction upon freedom of movement must amount to the degree associated with an arrest as opposed to an investigative detention," the last factor "dictates that the officer's knowledge of probable cause be manifested to the suspect . . . [and that] the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest." *Dowhitt*, 931 S.W.3d at 255. The "reasonable person" is presumed to be innocent. *Id.* at 254 (citing *Florida v. Bostick*, 501 U.S. 429, 438 (1991)). Further, a "determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury*, 511 U.S. at 323.

---

[4]Copeland argues,
> [A]t the point in the interview, or interrogation, of Appellant by Investigator Cavazoz when Cavazoz abandoned the pretextual purpose of the meeting and confronted Appellant with the allegations of the complainant, the situation amounted to a formal restraint on freedom of Appellant's movement of the degree associated with formal arrest, and Appellant was subjected to either express questioning or its functional equivalent that the investigator should have known was reasonably likely to elicit an incriminating response.

"[T]he ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Colvin v. State*, 467 S.W.3d 647, 658 (Tex. App.—Texarkana 2015, pet. ref'd) (quoting *Beheler*, 463 U.S. at 1125; *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). In determining whether law enforcement has created a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, circumstances that may be relevant include the location of the questioning, "whether the suspect arrived at the interrogation place voluntarily, the length of the interrogation, any requests by the suspect to see relatives or friends, and the degree of control exercised over the suspect." *Gardner v. State*, 433 S.W.3d 93, 98 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (citing *Ervin v. State*, 333 S.W.3d 187, 205 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd)). We also examine such things as "the location of the questioning, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning." *Howes v. Fields*, 565 U.S. 499, 509 (2012) (citations omitted)).

Questioning at a police station when a suspect arrives voluntarily does not necessarily indicate a suspect is "in custody," particularly when there is nothing to indicate that the suspect's freedom to depart was restricted in any way. *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (per curiam). Nor is a police officer's plan to arrest a suspect relevant to whether a suspect was "in custody," unless the officer informs the suspect of his plan and tells him he is not free to leave. *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

11

Based on the totality of the circumstances surrounding the interrogation, the trial court could have found that the following facts tended to show that, when Copeland made his incriminating statements, the interrogation was noncustodial:[5]  (1) Copeland came to the station voluntarily in his own vehicle, (2) Copeland was not searched or handcuffed and had freedom of movement, (3) Cavazoz was the only law enforcement officer present during the questioning, (4) Cavazoz conducted the entire interview in a non-confrontational tone, (5) prior to Copeland's admission, Cavazoz informed Copeland he was free to leave at any point, (6) Cavazoz did not pressure or coerce a confession from Copeland, (7) the length of the interview was less than twenty minutes, (8) Copeland made no requests to leave the room for any reason, and (9) even after Copeland made all of his incriminating statements, he left in his own vehicle. *See Colvin*, 467 S.W.3d at 658–59.

Here, Cavazoz assured Copeland that he was free to leave the interview and allowed Copeland to leave after his confession.  In light of Cavazoz' assurances and the absence of police coercion and control, the circumstances show that Copeland confessed on Cavazoz' urging without threat that he would be taken forcibly, which is not enough to establish custody.  *See Dancy v. State*, 728 S.W.2d 772, 778–79 (Tex. Crim. App. 1987).  Thus, we find that, at the time of Copeland's confessions, a reasonable person would not believe that he was currently under restraint to the degree associated with an arrest.  *See Wilson v. State*, 442 S.W.3d 779, 784–87 (Tex. App.—Fort Worth 2014, pet. ref'd).

---

[5]Copeland did not request, and the trial court did not provide, findings of fact and conclusions of law.

12

As to the fourth factor, custody is not established "unless the manifestation of probable cause 'combined with other circumstances' of the interview, such as duration or factors of 'the exercise of police control over [a suspect],' would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest." *Saenz*, 411 S.W.3d at 496. Cavazoz informed Copeland that he believed Copeland had sexually assaulted B.H. based on the way he was acting. Copeland does not demonstrate how Cavazoz' expression of his belief amounted to a manifestation of probable cause. Additionally, although Cavazoz failed to inform Copeland that he was free to leave after he incriminated himself, Cavazoz did verbalize that he had probable cause to arrest him and allowed Copeland to leave in his own vehicle. "This factor weighs heavily in favor of finding that [Copeland] was not in custody." *Gardner*, 433. S.W.3d at 99 (citing *United States v. Jones*, 523 F.3d 1235, 1243–44 (10th Cir. 2008)).

Because the trial court did not abuse its discretion in determining that Copeland was not in custody at the time of his confession, the trial court did not err in overruling Copeland's suppression motion and admitting his statements. Therefore, we overrule Copeland's second point of error.

III.    **The Judgment Must Be Modified to Reflect Copeland's Plea of Not Guilty**

This Court has the authority to modify a judgment to make the record speak the truth when the matter has been called to our attention by any source. TEX. R. APP. P. 43.2; *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.). "Our authority to reform incorrect judgments is not dependent on the request of any party, nor does it turn on a question of whether a party has or has not objected

13

in trial court; we may act sua sponte and may have a duty to do so." *Rhoten*, 299 S.W.3d at 356 (citing *Asberry v. State*, 813 S.W.2d 526, 531 (Tex. App.—Dallas 1991, writ ref'd); *see French*, 830 S.W.2d at 609.

The trial court's judgment incorrectly recites that Copeland pled guilty to the offense. However, the reporter's record demonstrates that Copeland pled not guilty, and we hereby modify the trial court's judgment to reflect that fact.

## IV.     Conclusion

We modify the trial court's judgment to reflect Copeland's plea of not guilty.  As modified, we affirm the trial court's judgment.



                                         Ralph K. Burgess
                                         Justice


Date Submitted:      March 28, 2018
Date Decided:        April 17, 2018

Do Not Publish